UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. |
| | Filed: |
| v. | |
| | Violations:  15 U.S.C § 1 |
| BRUCE F. ISRAEL, | Sherman Act Conspiracy |
| Defendant. | TWO COUNTS |

_____/

## PLEA AGREEMENT

The United States Department of Justice, Antitrust Division ("United States") and BRUCE F. ISRAEL ("defendant") hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

## RIGHTS OF DEFENDANT

1.      The defendant understands his rights:

   (a)    to be represented by an attorney;

   (b)    to be charged by Indictment;

   (c)    to plead not guilty to any criminal charge brought against him;

   (d)    to have a trial by jury, at which he would be presumed not

1

guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for him to be found guilty;

    (e)    to confront and cross-examine witnesses against him and to subpoena witnesses in his defense at trial;

    (f)    not to be compelled to incriminate himself;

    (g)    to appeal his conviction, if he is found guilty; and

    (h)    to appeal the imposition of sentence against him.

## AGREEMENT TO PLEAD GUILTY AND WAIVE CERTAIN RIGHTS

2.    The defendant knowingly and voluntarily waives:

    (a)    the rights set out in subparagraphs 1(b)-(f) above;

    (b)    the right to file any appeal or collateral attack, including but not limited to an application or motion under 28 U.S.C. § 2241 or 2255, that challenges his conviction, including but not limited to any appeal or collateral attack raising an argument that (1) the statute to which he is pleading guilty is unconstitutional or (2) the admitted conduct does not fall within the scope of such statute; and

    (c)    the right to file any appeal or collateral attack, including but not limited to an appeal under 18 U.S.C. § 3742 or an application or motion under 28 U.S.C. § 2241 or 2255, that challenges a sentence of incarceration

imposed by the Court if that sentence is within or below the Sentencing

Guidelines range as determined by the Court, or the imposition of a criminal

fine by the Court if that fine is within or below the recommended fine range

as set forth in Paragraph 9(e), below, regardless of how that sentence is

determined by the Court. This agreement does not affect the rights or

obligations of the United States as set forth in 18 U.S.C. § 3742(b).

Nothing in this paragraph, however, will act as a bar to the defendant perfecting

any legal remedies he may otherwise have 1) on collateral attack respecting claims

of ineffective assistance of counsel; or 2) on appeal or collateral attack respecting

claims of prosecutorial misconduct. The defendant agrees that there is currently no

known evidence of ineffective assistance of counsel or prosecutorial misconduct.

Consistent with Fed. R. Crim. P. 11(b)(1)(O), the defendant recognizes that if he is

not a citizen of the United States pleading guilty may have consequences with

respect to his immigration status, including removal from the United States, denial

of citizenship, and denial of admission to the United States in the future. Pursuant

to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a

two-count Information to be filed in the United States District Court for the Eastern

District of Michigan. Count One of the Information will charge the defendant with

participating in a conspiracy to suppress and eliminate competition by agreeing to

rig bids for contracts to provide asphalt paving services in the state of Michigan

beginning at least as early as March 2013 and continuing until at least as late as November 2018, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Count Two of the Information will charge the defendant with participating in a conspiracy to suppress and eliminate competition by agreeing to rig bids for contracts to provide asphalt paving services in the state of Michigan beginning at least as early as July 2017 and continuing until at least as late as May 2021, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3.     The defendant will plead guilty to the criminal charges described in Paragraph 2 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below. The United States agrees that at the arraignment, it will stipulate to the release of the defendant on his personal recognizance, pursuant to 18 U.S.C. § 3142, pending the sentencing hearing in this case.

## FACTUAL BASIS FOR OFFENSE CHARGED

4.     Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

(a)     As to Count One:

(i)     For purposes of this Plea Agreement, the "relevant period" is that period beginning at least as early as March 2013 and continuing until at least as late as November 2018. During the

4

relevant period, the defendant was Vice-President and part-owner of Company A, an entity organized and existing under the laws of Michigan and with its principal place of business in the Eastern District of Michigan. During the relevant period, Company A was a provider of asphalt paving services and was engaged in the provision of asphalt paving services in the state of Michigan. These asphalt paving services included, but were not limited to, asphalt paving projects such as large driveways, parking lots, and private roadways.

(ii) During the relevant period, Company B also was a provider of asphalt paving services, with its principal place of business in the Eastern District of Michigan. During the relevant period, the defendant participated in a conspiracy with other individuals, Company A, and Company B, the primary purpose of which was to rig bids for contracts to provide asphalt paving services in the state of Michigan. In furtherance of the conspiracy, the defendant and other officers and employees of Company A engaged in conversations and communications with representatives of Company B regarding which asphalt paving services contracts each company wanted to win, and agreed, during these conversations and communications, to rig bids for asphalt paving services contracts in

each other's favor.  To effectuate these bid-rigging agreements, the agreed-upon winning co-conspirator solicited intentionally non-competitive bids from the agreed-upon losing co-conspirator.  The agreed-upon winning co-conspirator provided the agreed-upon losing co-conspirator with the price it intended to bid, and the agreed-upon losing co-conspirator used that information to craft a higher-priced non-competitive bid, which it then submitted to the customer.  As a result of these bid-rigging agreements, Company A and Company B each provided asphalt paving services and accepted payment under contracts obtained through a collusive and non-competitive process.  The conspiracy with Company B involved at least five participants.

(iii)    During the relevant period, records and documents necessary for the provision of asphalt paving services by one or more of the co-conspirators, as well as payment for those services, traveled in interstate trade and commerce.  During the relevant period, the business activities of conspirators in connection with the provision of asphalt paving services that were the subject of this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.

(iv)    During the relevant period, acts in furtherance of this conspiracy were carried out within the Eastern District of Michigan. The conspiratorial conversations and communications described above took place in this District, and asphalt paving services that were the subject of this conspiracy were provided by one or more of the co-conspirators to customers in the Eastern District of Michigan.

(b)    As to Count Two:

(i)    For purposes of this Plea Agreement, the "relevant period" is that period beginning at least as early as July 2017 and continuing until at least as late as May 2021. During the relevant period, the defendant was Vice-President and part-owner of Company A, an entity organized and existing under the laws of Michigan and with its principal place of business in the Eastern District of Michigan. During the relevant period, Company A was a provider of asphalt paving services and was engaged in the provision of asphalt paving services in the state of Michigan. These asphalt paving services included, but were not limited to, asphalt paving projects such as large driveways, parking lots, and private roadways.

(ii)    During the relevant period, F. ALLIED CONSTRUCTION COMPANY, INC. ("ALLIED") also was a

provider of asphalt paving services, with its principal place of

business in Clarkston, Michigan. During the relevant period, the

defendant participated in a conspiracy with other individuals,

Company A, and ALLIED, the primary purpose of which was to rig

bids for contracts to provide asphalt paving services in the state of

Michigan. In furtherance of the conspiracy, the defendant and other

officers and employees of Company A engaged in conversations and

communications with representatives of ALLIED regarding which

asphalt paving services contracts each company wanted to win, and

agreed, during these conversations and communications, to rig bids

for asphalt paving services contracts in each other's favor. To

effectuate these bid-rigging agreements, the agreed-upon winning co-

conspirator solicited intentionally non-competitive bids from the

agreed-upon losing co-conspirator. The agreed-upon winning co-

conspirator provided the agreed-upon losing co-conspirator with the

price it intended to bid, and the agreed-upon losing co-conspirator

used that information to craft a higher-priced non-competitive bid,

which it then submitted to the customer. As a result of these bid-

rigging agreements, Company A and ALLIED each provided asphalt

paving services and accepted payment under contracts obtained

through a collusive and non-competitive process. The conspiracy with ALLIED involved at least five participants.

(iii)    During the relevant period, the business activities of conspirators in connection with the provision of asphalt paving services that were the subject of this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.

(iv)    During the relevant period, acts in furtherance of this conspiracy were carried out within the Eastern District of Michigan. The conspiratorial conversations and communications described above took place in this District, and asphalt paving services that were the subject of this conspiracy were provided by one or more of the co-conspirators to customers in the Eastern District of Michigan.

(c)    As to Counts One and Two:

(i)    During the relevant periods, the volume of commerce attributable to Company A under U.S.S.G. §§ 1B1.3 and 2R1.1 associated with the provision of asphalt paving services affecting U.S. customers totaled at least $23,465,114.

## ELEMENTS OF THE OFFENSE

5.    The elements of the offenses charged in Count One and Count Two of the Information are that:

(a)     the conspiracy described in each count of the Information existed at or about the time alleged;

(b)     the defendant knowingly became a member of the conspiracy described in each count of the Information; and

(c)     the conspiracy described in each count of the Information either substantially affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods and services.

## POSSIBLE MAXIMUM SENTENCE

6.     The defendant understands that the statutory maximum penalty which may be imposed against him upon conviction for each violation of Section One of the Sherman Antitrust Act is:

(a)     a term of imprisonment for ten (10) years (15 U.S.C. § 1);

(b)     a fine in an amount equal to the greatest of (1) $1 million, (2) twice the gross pecuniary gain the conspirators derived from the crime, or (3) twice the gross pecuniary loss caused to the victims of the crime by the conspirators (15 U.S.C. § 1; 18 U.S.C. § 3571(b) and (d)); and

(c)     a term of supervised release of three (3) years following any term of imprisonment.  If the defendant violates any condition of supervised release, the defendant could be required to serve up to two (2) years in prison (18 U.S.C. § 3559(a)(3); 18 U.S.C. § 3583(b)(2) and (e)(3)); and

United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines,"
or "Guidelines") §5D1.2(a)(2)).

7.      In addition, the defendant understands that:

(a)     pursuant to U.S.S.G. §5E1.1 or 18 U.S.C. § 3663(a)(3) or
3583(d), the Court may order him to pay restitution to the victims of the
offense; and

(b)     pursuant to 18 U.S.C. § 3013(a)(2)(A), the Court is required to
order the defendant to pay a $100.00 special assessment for each count upon
conviction for the charged crime.

## SENTENCING GUIDELINES

8.      The defendant understands that the Sentencing Guidelines are
advisory, not mandatory, but that the Court must consider, in determining and
imposing sentence, the Guidelines Manual in effect on the date of sentencing
unless that Manual provides for greater punishment than the Manual in effect on
the last date that the offense of conviction was committed, in which case the Court
must consider the Guidelines Manual in effect on the last date that the offense of
conviction was committed.  The parties agree there is no *ex post facto* issue under
the November 1, 2023 Guidelines Manual.  The Court must also consider the other
factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence.  The
defendant understands that the Court will make Guidelines determinations by

11

applying a standard of preponderance of the evidence. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). Pursuant to U.S.S.G. §1B1.8, the United States agrees that self-incriminating information that the defendant provides to the United States pursuant to this Plea Agreement will not be used to increase the volume of affected commerce attributable to the defendant or in determining the defendant's applicable Guidelines range, except to the extent provided in U.S.S.G. §1B1.8(b).

## SENTENCING AGREEMENT

9.      Pursuant to Fed. R. Crim. P. 11(c)(1)(B) and subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 19 of this Plea Agreement, the United States and the defendant agree that the following Sentencing Guidelines apply:

    (a)    Base offense level, U.S.S.G. §2R1.1(a)    12

    (b)    Agreement to submit noncompetitive bids,

        U.S.S.G. §2R1.1(b)(1):    +1

    (c)    Volume of commerce, U.S.S.G. §2R1.1(b)(2)(B)

        (stipulated to be $23,465,114):    +4

    (d)    Aggravating role as manager or supervisor,

*24-30 months*
*17 =*

U.S.G. §3B1.1(b):                                    +3

(e)   Clear demonstration of acceptance of

responsibility for the offenses,

U.S.G. §3E1.1(a), (b):                          -3

(f)   Fine range calculated as one to five percent of the volume

of commerce (stipulated to be $23,465,114),

U.S.G. §2R1.1(c)(1):   $234,651.14 - $1,000,000

10.   The defendant understands that, notwithstanding Paragraph 14, below, if the United States obtains or receives additional evidence or information prior to sentencing that, in its sole discretion, it determines to be credible and materially in conflict with the application of U.S.G. §3E1.1(b), then the United States shall no longer be bound to recommend an additional one-point reduction pursuant to that Guideline, as reflected in Paragraph 9(e), above.

11.   The United States and the defendant agree to recommend that the defendant's sentence not include a restitution order for the offenses charged in the Information.

12.   The United States agrees to recommend a sentence consistent with the applicable Sentencing Guidelines range as determined by the Court and with any motion filed by the United States pursuant to Paragraph 17, below, and a criminal

13

fine within the applicable Sentencing Guidelines fine range.  The defendant is free to recommend or argue for any specific sentence to the Court.

13.    Either party is free to ask the Court to consider the factors set forth in 18 U.S.C. § 3553(a) in determining and imposing the defendant's sentence.  Either party is free to oppose the other party's sentencing recommendation based on those factors.

14.    The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0.  The parties agree not to seek at the sentencing hearing any Guidelines adjustment for any reason that is not set forth in this Plea Agreement.  Furthermore, the defendant and the United States expressly acknowledge that while none of the Guidelines calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed. R. Crim. P. 11(c)(1)(B) that certain components of those calculations—specifically, those set forth above in Paragraph 9—are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed-upon calculations set forth in Paragraph 9.

15.   The defendant understands that the Court will order him to pay a $100 special assessment for each count pursuant to 18 U.S.C. § 3013(a)(2)(A) in addition to any fine imposed.

16.   The defendant understands that the sentence to be imposed on him is within the sole discretion of the sentencing judge. The United States cannot and does not make any promises or representations as to what sentence he will receive. However, the United States will inform the Probation Office and the Court of (a) this Agreement; (b) the nature and extent of the defendant's activities with respect to this case and all other activities of the defendant which the United States deems relevant to sentencing; and (c) the nature and extent of the defendant's cooperation with the United States. In so doing, the United States may use any information it deems relevant, including information provided by the defendant both prior and subsequent to the signing of this Agreement. The United States reserves the right to make any statement to the Court or the Probation Office concerning the nature of the criminal violations charged in the attached Information, the participation of the defendant therein, and any other facts or circumstances that it deems relevant. The United States also reserves the right to comment on or to correct any representation made by or on behalf of the defendant, and to supply any other information that the Court may require. To enable the Court to have the benefit of all relevant sentencing information, the United States may request, and the

defendant will not oppose, that sentencing be postponed until his cooperation is complete.

17.    Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 19 of this Plea Agreement, the United States agrees that prior to sentencing it will make a motion pursuant to U.S.S.G. §5K1.1 for a downward departure from the applicable Guidelines imprisonment range because of the defendant's substantial assistance in the United States' investigation and prosecution of violations of federal antitrust and related criminal laws involving bids for contracts to provide asphalt paving services in the state of Michigan. The defendant acknowledges that the amount of the recommended downward departure and the decision as to whether he has complied with the terms of this Plea Agreement are within the sole discretion of the United States. It is understood that, should the United States determine that the defendant has violated any provision of this Plea Agreement, such a determination will release the United States from any obligation to file a motion pursuant to U.S.S.G. §5K1.1 but will not entitle the defendant to withdraw his guilty plea once it has been entered.

18.    The United States and the defendant understand that the Court retains complete discretion to accept or reject either party's sentencing recommendation. The defendant understands that, as provided in Fed. R. Crim. P. 11(c)(3)(B), if the

Court does not impose either party's sentencing recommendation, he nevertheless has no right to withdraw his plea of guilty.

## DEFENDANT'S COOPERATION

19.    The defendant will cooperate fully and truthfully with the United States in the prosecution of this case, the current federal investigation of violations of federal antitrust and related criminal laws involving the provision of asphalt paving services in the state of Michigan and elsewhere, any federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party (collectively "Federal Proceeding"). Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal Proceeding. The full, truthful, and continuing cooperation of the defendant will include, but not be limited to:

(a)    producing all documents, including claimed personal documents, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, in the possession, custody, or control of the defendant, that are requested by attorneys and agents of the United States in connection with any Federal Proceeding;

17

(b)     making himself available for interviews, not at the expense of

the United States, upon the request of attorneys and agents of the United

States in connection with any Federal Proceeding;

(c)     responding fully and truthfully to all inquiries of the United

States in connection with any Federal Proceeding, without falsely

implicating any person or intentionally withholding any information, subject

to the penalties of making a false statement or declaration (18 U.S.C. §§

1001, 1623), obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), or conspiracy

to commit such offenses;

(d)     otherwise voluntarily providing the United States with any

material or information not requested in (a) - (c) of this paragraph and not

protected under the attorney-client privilege or work-product doctrine that he

may have that is related to any Federal Proceeding;

(e)     when called upon to do so by the United States in connection

with any Federal Proceeding, participating in affirmative investigative

techniques, including but not limited to making telephone calls, recording

conversations, and introducing law enforcement officials to other

individuals, with all such activity being conducted only at the express

direction and under the supervision of attorneys and agents of the United

States;

(f)     when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a false statement or declaration in grand jury or court proceedings (18 U.S.C. § 1623), obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), and contempt (18 U.S.C. §§ 401 - 402); and

(g)     not committing, participating in, or attempting to commit or participate in any additional crimes.

## GOVERNMENT'S AGREEMENT

20.     Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 19 of this Plea Agreement, and upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of sentence, the United States agrees that it will not bring further criminal charges against the defendant for any act or offense committed before the date of signature of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the provision of asphalt paving services in the state of Michigan ("Relevant Offense"). The nonprosecution terms of this paragraph do not apply to (a) any acts of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), contempt (18 U.S.C. §§ 401-402), or

19

conspiracy to commit such offenses; (b) civil matters of any kind; (c) any violation

of the federal tax or securities laws or conspiracy to commit such offenses; or (d)

any crime of violence.

21.    The defendant understands that he may be subject to suspension or

debarment action by state or federal agencies other than the United States

Department of Justice, Antitrust Division, based upon the conviction resulting

from this Plea Agreement, and that this Plea Agreement in no way controls what

action, if any, other agencies may take.  However, the Antitrust Division agrees

that, if requested, it will advise the appropriate officials of any governmental

agency considering such action of the fact, manner, and extent of the cooperation

of the defendant as a matter for that agency to consider before determining what

action, if any, to take.  The defendant nevertheless affirms that he wants to plead

guilty regardless of any suspension or debarment consequences of his plea.

## REPRESENTATION BY COUNSEL

22.    The defendant has reviewed all legal and factual aspects of this case

with his attorney and is fully satisfied with his attorney's legal representation.  The

defendant has thoroughly reviewed this Plea Agreement with his attorney and has

received satisfactory explanations from his attorney concerning each paragraph of

this Plea Agreement and alternatives available to the defendant other than entering

into this Plea Agreement.  After conferring with his attorney and considering all

available alternatives, the defendant has made a knowing and voluntary decision to enter into this Plea Agreement.

## VOLUNTARY PLEA

23.     The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement.  The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

24.     The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant has failed to provide full, truthful, and continuing cooperation, as defined in Paragraph 19 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery, email, or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating

to the investigation resulting in this Plea Agreement. The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant for any Relevant Offense, the statute of limitations period for such offense will be tolled for the period between the date of signature of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

25.     The defendant understands and agrees that in any further prosecution of him resulting from the release of the United States from its obligations under this Plea Agreement because of the defendant's violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by him to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against him. In addition, the defendant unconditionally waives his right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

## ENTIRETY OF AGREEMENT

26.     This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charges in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

22

27.    The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

28.    A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

DATED: _____1/11/24_____

BY: _____

    BRUCE F. ISRAEL
    Defendant


BY: _____

    JAMES H. MUTCHNIK
    IL Bar No. 6201681
    LAYNE A. SAKWA
    P66050
    JAMES C. HOWARTH
    P15179
    Counsel for Bruce F. Israel

Respectfully submitted,

BY: _____

    RUBEN MARTINEZ, JR.
    TX Bar No. 24052278
    ALLISON M. GORSUCH
    IL Bar No. 6329734
    AMBRIS S. SARAVANAN
    IL Bar No. 6342503
    MELANIE G. WEGNER
    IL Bar No. 6324826
    Trial Attorneys

    MICHAEL N. LOTERSTEIN
    IL Bar No. 6297060
    Assistant Chief
    U.S. Department of Justice
    Antitrust Division
    209 S. LaSalle St. Suite 600
    Chicago, Illinois
    Tel: 312-984-7200